LELLIS *v.* MICHIGAN CENTRAL RAILROAD CO.

1. RAILROADS — NEGLIGENTLY-LOADED CAR — CONNECTING LINES — DEATH OF SWITCHMAN—LIABILITY.

A railroad company which delivered to a connecting line, for transshipment, a car of lumber negligently loaded, is not liable for the death of a switchman of the latter company, caused by the shifting of the lumber, where the accident happened after it became the duty of the latter company to provide for the inspection of the car.

2. SAME—NEGLIGENCE OF INSPECTOR—FELLOW-SERVANTS.

Where a railroad company provided a competent inspector to determine if car loads of lumber received from other roads were properly loaded, and the inspector either failed to make an inspection of a car which was not securely loaded, or made a faulty one, and some of the lumber fell off and killed one of its switchmen, the company is not liable, as the accident was due to the negligence of a fellow-servant.

Error to Washtenaw; Kinne, J. Submitted November 16, 1899. Decided May 15, 1900.

Case by Cecelia R. Lellis, administratrix of the estate of Stephen Lellis, deceased, against the Michigan Central Railroad Company and the Ann Arbor Railroad, for the alleged negligent killing of plaintiff's intestate. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Lehman Bros. & Stivers* (*Navin & Sheahan*, of counsel), for appellant.

*Lawrence & Butterfield*, for appellee Michigan Central Railroad Co.

*T. W. Whitney* (*Alexander L. Smith*, of counsel), for appellee Ann Arbor Railroad.

Moore, J. Stephen Lellis, plaintiff's intestate, was a switchman at work in the yards of the Michigan Central Railroad Company in Detroit. A car load of timber had been loaded at Cadillac, Mich., upon a flat car. The Ann Arbor Railroad Company brought this car to Ann Arbor, where it was transferred to the Michigan Central Railroad, and conveyed by it to Detroit. There were pockets on the sides of the flat car, 4 inches by 4 inches in size, into which to put stakes to hold the load in place. It is claimed the persons loading the car used for stakes 2x4 scantling, joining the tops together by nailing a strip of board thereto. During the switching of the car in the yard at Detroit, one or more of these stakes gave way. Some of the timbers fell upon Mr. Lellis, who received injuries from which he soon thereafter died. His widow was appointed administratrix, and brought this suit. The circuit judge directed a verdict in favor of the defendants. The case is brought here by writ of error.

It is the claim of the defendants that the stakes are not part of the equipment of the car, but are part of the load. One witness so swore. It is also claimed that it is a matter of common knowledge upon the part of those at all familiar with the loading and shipping of lumber and timber upon flat cars in this State that the stakes are no

part of the car, but the stakes are furnished by the shipper, and, when the timber or lumber is unloaded, the stakes are not returned with the empty flat car, but a new set of stakes is provided each time the car is loaded. It is said that, the stakes being regarded as a part of the load, the company was not liable. The Michigan Central Railroad employed an inspector, whose duty it was to inspect the cars upon their arrival at the junction before the cars passed into the switching yard. This inspector, Mr. Fenwick, was on duty when this car arrived. It was the duty of the inspector, if he found a car was not in a condition to go forward safely, to mark it, "Rejected," and send it to the transfer house. A record is kept of the rejected cars, but no record is kept of those which are not rejected. The record did not show that this car was marked, "Rejected." It is said, if the inspection was faulty, and would have revealed the defect if the inspector was not negligent, the negligence of the inspector was the negligence of a fellow-servant, and the plaintiff cannot recover,—citing *Smith* v. *Potter*, 46 Mich. 258 ( 9 N. W. 273, 41 Am. Rep. 161 ); *Dewey* v. *Railway Co.*, 97 Mich. 329 ( 56 N. W. 756, 22 L. R. A. 292, 37 Am. St. Rep. 348); *Jarman* v. *Railway Co.*, 98 Mich. 135 ( 57 N. W. 32 ).

The defendant the Ann Arbor Railroad Company is not liable, under the authority of *Fowles* v. *Briggs*, 116 Mich. 425 ( 74 N. W. 1046, 40 L. R. A. 528, 72 Am. St. Rep. 537 ). The question whether it was the duty of that company to furnish and equip its cars with stakes is not necessarily in the case, and upon it, therefore, we express no opinion.

If the defendant the Michigan Central Railroad Company is liable, it must be because it failed to provide inspection which would have disclosed to the inspector the dangerous condition of this load. It is established by the testimony that this company did provide a competent inspector. He either failed to make any inspection, or made a faulty one. In either case, under the decisions of

this court, the defendant is relieved from any liability. This inspector and Mr. Lellis, the switchman, were fellow-servants engaged in the same common employment. This is not a case involving the duty to furnish safe machinery, and to see that it is kept in proper repair; it is a case involving the duty of a railroad company which is daily receiving, as it is bound to do, cars from other companies for immediate transshipment over its own road. Its duty towards its employés is to provide a competent inspector to inspect these cars when so received, and to determine whether they are in proper condition for transshipment,— this for the reason, as is well known, that cars are apt to become injured while being transported. Immediate supervision in such cases by "either the ultimate or representative principal" is impossible. When a company has employed such an inspector, it has performed its full duty. The rule is a just and reasonable one. Employés understand this, and contract with reference to it. They know that the master is not liable where it has employed competent servants to perform the work of the same common employment. The rule is so well stated by the late Justice Campbell in *Smith* v. *Potter*, 46 Mich. 258 (9 N. W. 273, 41 Am. Rep. 161), that I quote it:

"In such a business as requires the employment of a multitude of persons, beyond the possible constant supervision of either the ultimate or representative principal, there can be no negligence, without the failure to use such precautions in choosing agents and guarding against perils as diligent prudence and foresight require. When the principal has done all that can be reasonably required of him to prevent risks to his servants, he has done all that he owes them. In the present case he appears, beyond dispute, to have done all this; and if the inspectors committed an error, or were guilty of negligence, he is not to blame for it. The work done is to be done at all hours, and at every place where there are railroad connections with other roads. It is not a duty of management or general supervision, but a task for which nothing is required but fidelity, and mechanical knowledge of a comparatively limited kind. It is such work as would seldom be

delegated to an officer of extensive responsibility, who has other interests to look after.    But, whatever be its quality, it was in this case not claimed to have been placed in wrong hands.    Nothing more could be asked of the employer."

The facts in that case are not materially different from those in the present.

It was also said in *Dewey* v. *Railway Co.*, 97 Mich. 334 (56 N. W. 757, 22 L. R. A. 294, 37 Am. St. Rep. 351), Mr. Justice LONG delivering the opinion:

"The master must undoubtedly exercise care in the selection of inspectors to see that cars are not improperly loaded or overburdened, so that they are dangerous to employés; but, after this has been done, it cannot be claimed that the master is to be held responsible for the faithful performance of the inspectors' duty.    Any other rule than this would make railroad companies insurers of the lives and limbs of employés."

Is not this case within the reasoning of the *Potter Case?* In that case the deadwoods of one car, which was rather lower than the other, had been loosened, and were leaning down, so that the deadwoods of the lower car went partially under those of the higher one, catching the plaintiff's arm.    Whether the car was started out by the other road in this condition, does not appear.    Would it have made any difference had this been the case?    Is the receiving railroad liable when another road has transferred to it a car defective in construction, and not liable when the defect has occurred during the transshipment?    Is not the duty of the inspector the same in both cases?    Is he not as much bound to reject the car in one case as in the other?    Can the receiving company act in any other way than through an inspector?    It does not have, cannot have, and is not by law required to have any other employé than an inspector to determine when cars received from another road are in condition fit for transportation over its own road.    Suppose a case where the stakes used were originally sufficient, but one or more had become broken by accident in transportation, and new

stakes supplied by the trainmen, which were insufficient; would the receiving road be liable for the failure of judgment or neglect on the part of the inspector?

The case of *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111), has no bearing upon the question now before the court. The question of inspection now before us was not involved in the case. The brake chain, furnished by the defendant company itself, was found to be insufficient in size and strength. The company sought to defend on the ground that it had provided a suitable person to test and inspect the chain. The *Potter Case* was not mentioned in the decision, and there was no occasion for referring to it.

In *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572), the sole question was the duty of the defendants— lumber manufacturers—to construct safe docks. Held, that the duty could not be delegated to an inspector. That decision has nothing to do either with the facts or the principle of this. *Smith* v. *Potter, supra,* was cited with approval and distinguished. Mr. Justice Morse, who wrote the leading opinion, cast no doubt upon the *Potter Case.* Chief Justice Sherwood concurred in the result. Justice Champlin concurred in reversing the judgment because in that case he did not think the duty of inspection could be delegated, while Justice Campbell concurred in reversal for errors upon the record. The only doctrine, therefore, established by that case is that the defendants could not delegate their duty to construct safe docks, so as to relieve themselves from liability. *Smith* v. *Potter, supra,* has been cited with approval by this court in the following cases: *Jarman* v. *Railway Co.*, 98 Mich. 135 (57 N. W. 32); *Brewer* v. *Railway Co.*, 56 Mich. 627 (23 N. W. 440); *Hunn* v. *Railroad Co.*, 78 Mich. 513, 518 (44 N. W. 502, 7 L. R. A. 500); *Peterson* v. *Railway Co.*, 67 Mich. 102 (34 N. W. 260, 11 Am. St. Rep. 564); *Hewitt* v. *Railroad Co.*, 67 Mich. 61 (34 N. W. 659); *Illick* v. *Railroad Co.*, 67 Mich. 632 (35 N. W. 708); *Adams* v. *Iron Cliffs Co.*,

78 Mich. 271, 289 (44 N. W. 270, 18 Am. St. Rep. 441);
*Van Dusen* v. *Letellier*, 78 Mich. 492, 504 (44 N. W.
572); *Balhoff* v. *Railroad Co.*, 106 Mich. 606, 614 (65
N. W. 592); *McDonald* v. *Railroad Co.*, 108 Mich. 7
(65 N. W. 597).

The judgment is affirmed.

The other Justices concurred.